[No. 16829.  Department Two.  March 18, 1922.]

ELLA F. SMITH, *Respondent,* v. GEORGIA PEARL
PONTIUS, *as Executrix etc., Appellant.*[1]

INSANE PERSONS (14)—PARENT AND CHILD (4-1)—SUPPORT OF
CHILD.  A divorced husband is not liable to the wife for expenses
in maintaining an insane child in a private asylum, where the child
had been regularly committed to a state institution, and was paroled
on the request of the mother who agreed to pay the expense of
maintaining the child, and it does not appear that the child received
any better treatment or that the removal was reasonably necessary
for the welfare of the child.

Appeal from a judgment of the superior court for
King county, Sessions, J., entered June 14, 1921, upon
findings in favor of the plaintiff, in an action for money
paid, tried to the court.  Reversed.

*Burkheimer & Burkheimer,* for appellant.

*Tucker & Hyland (Ford Q. Elvidge,* of counsel), for
respondent.

MAIN, J.—The plaintiff brought this action against
Frank A. Pontius for the purpose of recovering a
large sum of money claimed to have been expended by
her in support and maintenance of the insane son of
the parties.  The trial resulted in findings of fact and
conclusions of law sustaining the plaintiff's right to
recover, and a judgment against the defendant in the
sum of $4,539.47.  From this judgment he appeals.
After the action was instituted and before it was tried,
Frank A. Pontius died, and the executrix of his last will
and testament was substituted as party.  In the in-
terest of clearness and facility of expression, when
the term appellant is here used it will be understood
to refer to the original defendant, Frank A. Pontius,
deceased.

[1]Reported in 205 Pac. 381.

In the year 1877, the appellant and respondent were married, and as a result thereof two children were born, one a boy, Frank A. Pontius, Jr., and the other a girl. On the 22d day of June, 1896, the parties were divorced and the custody of Frank A. Pontius, Jr., in the decree was awarded to his father, the appellant, and the custody of the daughter was given to the mother, the respondent. Subsequent to this time both parties remarried.

On September 19, 1904, and approximately one month after he attained his majority, Frank A. Pontius, Jr., was adjudged insane and committed to the asylum at Steilacoom. After the divorce and prior to his commitment, he had lived part of the time with the father and part of the time with his mother, but probably a greater portion of it with the father. On February 25, 1909, the respondent filed a petition in the insanity proceeding, asking that her son be paroled, and as a result thereof an order was entered on the same day permitting a parole. After this the respondent, with the exception of a very brief period, caused him to be kept in private sanitariums and either paid the expense incident thereto or obligated herself for the same. Sometime during the year 1918, the respondent being no longer financially able to maintain the son in private sanitariums, he was returned to the asylum to which he had been committed, and was there at the time of the trial.

The controlling question is whether the appellant is liable for any portion of the funds expended by the respondent, or which she obligated herself to expend, for the support and maintenance of the son after he was paroled and prior to the time that he was returned to the asylum. As a fact, it will be assumed that he was insane prior to the time that he attained his

majority and that his insanity was continuous up to the time he was committed. As a matter of law, it will be assumed, but not decided, that the parents' liability for the support and maintenance of an adult son who became insane during his minority is the same as the liability of the parents to support a minor child.

If the appellant is liable, it can only be upon the ground that the money expended by the respondent for the son in private sanitariums was reasonably necessary for his support and maintenance. In the petition for the parole, the respondent recited that, if it were granted, she would remove the insane person to a suitable private sanitarium and would cause him to be maintained there without expense to the state. The order granting the parole recites that the insane person be placed in the custody of the respondent, the petitioner in that proceeding, and that he be placed, without expense to the state, in a private sanitarium. When Frank A. Pontius, Jr., was originally committed to the asylum it was at the instance of his father, the appellant. The evidence shows that the appellant was averse to having him taken from the asylum where he was committed at the time the order permitting the parole was entered. There is no evidence that the appellant at any time made any specific promise to contribute any sum towards the necessary expense of maintaining the son in a private sanitarium. In fact the evidence is that he declined to make any specific promise. There is no showing that the insane person was not properly treated and taken care of at the asylum to which he had been committed. Neither is there any showing that, if he were placed in a private sanitarium, he would receive better treatment. The question then is reduced to this: Is the appellant liable for any part of the expense here sought to be recovered, when the son had been regularly committed to

the asylum at Steilacoom, was well treated there and was not removed because better treatment could be had elsewhere. The respondent, in causing his removal from a public institution in order that he might be placed in a private asylum, was prompted by a natural feeling. The sentiment which would cause her to take this course is readily understood. Before, however, the appellant can be held liable there must be found some legal foundation for the action. The respondent, in her brief, concludes her discussion of this question with the statement:

"Now we submit that a father cannot thus throw off onto the state his own obligation to support his own child, or thus compel the other spouse to do so. To so hold would open the door to a ready means whereby a class of parents might easily become rid of their natural legal obligations at the expense of the public or a softer hearted spouse."

It must be remembered that the state is not here complaining. If Frank A. Pontius, Jr., at the time he was committed to the asylum was insane, and we must accept this to be the fact, he was properly committed. The law makes no distinction as to the class of persons that may be sent to such an institution. The fact that the parents of the unfortunate son, if it were a fact, were able to maintain him would not bar the doors of the asylum to him, provided he was in fact insane. Upon the record in this case but one conclusion can be arrived at, and that is that it was not necessary for the welfare of the son that he be removed from the public institution and placed in private institutions, and that therefore the money expended for his maintenance and support was not reasonably necessary. The disposition of this question being controlling, it is unnecessary to discuss or determine the other questions argued in the briefs.

The judgment will be reversed, and the cause remanded with directions to the superior court to dismiss the action.

PARKER, C. J., HOLCOMB, MACKINTOSH, and HOVEY, JJ., concur.